## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **CAMMIE KEENON** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION 2:17-CV-00137** |
| | § | **JURY REQUESTED** |
| | § | |
| | § | |
| | § | |
| **EASTMAN CHEMICAL COMPANY** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

### JURISDICTION

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 (4); 42 U.S.C. § 2000e -5(f) and 28 U.S.C. Sections 2101 and 2102.  This suit is authorized and instituted pursuant to Title VII of the Act of Congress known as "The Civil Rights Act of 1964", 42 U.S.C. §§ 2000e et. seq. The jurisdiction of this Court is invoked to secure protection of and to redress depravation of rights secured by (a) 42 U.S.C. § 2000e et. seq. as amended by the Civil Rights Act of 1991, providing for relief against discrimination in employment providing for equal rights of all person and every state and territory and the jurisdiction of the United States.

### PARTIES

2.      Plaintiff, Cammie Keenon in an individual residing at 13787 CR 1128D, Kilgore, Rusk County, Texas  75662.

3.      Defendant, Eastman Chemical Company has continuously been and is doing business in the Eastern District of Texas.  Eastman Chemical Company may be served by delivering a copy of the Complaint to its registered agent for service, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## FACTS

4.       Plaintiff was a female employee of Defendant.   In mid-July, 2014, Cammie Keenon ("Keenon") commenced employment as an employee at the Defendant's plant located in Longview, Harrison County, Texas. At all times, relevant hereto, Plaintiff was discriminated against by Defendant with respect to compensation, terms, conditions, privileges, and opportunities of employment and has been subject to those illegal acts, practices, and conduct alleged in this Complaint.

5.       Plaintiff started work at Eastman Chemical on July 14, 2014. As the only female operator working under Randy Williams, Keenon was treated differently by Williams than were the other male operators from the beginning of her employment. Keenon received little-to-no training, despite her multiple requests to the lead operator and to Randy Williams for more guidance. Keenon was belittled and made to feel foolish when Keenon asked for help.

6.       Keenon was repeatedly reprimanded for using the unit control room (nicknamed the "Batcave") for the unit, while Randy Williams' other direct-report operator for the unit (Will Reese) continued to use the control room with no issue. The "Batcave" had been in use for decades before Keenon began work at Eastman, and its' prohibition was only enforced specifically for Plaintiff by Randy Williams.  In late 2014, all other shifts and operators continued to use this control room at that time.)

7.       Keenon was repeatedly denied the opportunity to work overtime, even several months after Keenon passed the unit certification test with a near-perfect score. Keenon was not allowed to work overtime, even though Will Reese and Christian O'Connor (operators who came to work after Keenon did) were being allowed to work overtime on other shifts.

8.       On or Around March 24, 2015, Keenon's supervisor, Williams berated her regarding the fact that she was not dressed out at 6:00 AM despite the fact that many of the other male employees were not dressed out at 6:00 AM and were, in fact, preparing to eat breakfast rather than working at the

time Williams was berating Keenon. This incident took place in front of several of Plaintiff's co-workers.

9.      On or around April 16, 2015, Plaintiff was approached by Debra Brill in the women's bathroom as she was preparing to leave after a shift. Debra said that she wanted to talk to Keenon and let Keenon know that she didn't think she was being treated fairly. She said that you should watch out for "people and supervisors who don't think women can work in a man's job." She insisted that Keenon needed to be careful, saying that it's a good idea to "start documenting everything" because it's your only protection in the event that someone comes after you. She went on to say that she and others had noticed Plaintiff wasn't being trained like her male co-workers.

10.      On or Around April 22, 2015, Plaintiff had her regularly scheduled progress review. Plaintiff met with Amber (Randy's boss), Carol (Amber's boss), and the HR manager. The first item mentioned was Plaintiff's need to be dressed by 6:00 for which she had previously been berated in from of her co-workers. Williams was unable to produce any documentation of any instances of Plaintiff being dressed late.

11.      Williams then went on to list a host of issues, with no documentation for any of it, and many other statements that contradicted each other. Williams was unable to provide any documentation. Plaintiff told the panel (first, second, and third-line supervision, as well as the HR manager) that these allegations were untrue, and given that there was no documentation, should be investigated. Plaintiff also told the panel that Randy and each operator have regular "one-on-ones" and asked Williams if he felt like he had ever mentioned to me any of the issues listed in the disciplinary action. He agreed that he had never mentioned any of them, and Linda Hess-Brown (HR) said, "That's fair. You should have been notified that these issues were present before."

12.      On April 24, 2015, Plaintiff and Amber Mulcahy had a meeting that lasted approximately an hour-and-a-half. In that meeting, Keenon further explained to her the situation with Williams, and that it had been going on since she began her employment and had recently escalated just before the

write-up. Plaintiff specifically expressed her belief that she was experiencing sex discrimination by Williams.

13.     On or around May 13, 2015, Plaintiff informed Williams that she was pregnant. At that time there was no discussion regarding any need for any medical documentation.

14.     A day or two later, Williams came to Plaintiff and stated that, upon further consideration, he would need a doctor's note to be sent to medical. Plaintiff's doctor provided the requested form and indicated that she was to have a lifting restriction of 25 pounds.

15.     On or around May 19, 2015, Keenon was sent to medical to meet with the nurse regarding her lifting restriction. Amber Mulcahy and Williams met with Plaintiff and informed her that they were refusing to accommodate her "work restrictions."

16.     Plaintiff specifically requested that her pregnancy-related lifting restriction be accommodated, which was flatly refused. Plaintiff also asked if she could be moved to the DCS (a computer unit at the plant). Other operators have done this in the past with non-pregnancy-related conditions. Defendant had also created entirely new temporary office jobs to accommodate non-pregnancy restrictions (for example, Wayne McGarity.) Plaintiff's requests for reasonable accommodation were denied. Plaintiff was told that she was, "free to go home on short-term disability, as soon as you get done with your meeting in HR." After this meeting, Plaintiff was offered an office position in IPC, but was not allowed to go back to her operator position.

17.     On September 21, 2015, Plaintiff was forced to take short-term disability leave even though she was still willing and able to perform her job duties. Plaintiff was off work from September 21, 2015 until after her child was born on January 8, 2016.

18.     On March 19, 2016, Plaintiff reported back to work. She was assigned to work on Shift 4, working under the supervision of Chance Craig. Plaintiff was still in the Eastman apprentice program as an operator.

19.     On or around April 27, 2016, Keenon asked Chance Craig about her performance and

specifically, what areas she needed improvement in. He said that Plaintiff was doing a great job from all accounts that he had heard, and mentioned no areas of improvement, despite her specific inquiry.

20.     May 11, 2016, Plaintiff failed Instrumentation test, which requires two subsequent labs for review and retest... Plaintiff was aware this would likely mean missing her May 23 deadline. Plaintiff made multiple requests to the training staff and her supervisor to have the labs conducted before her May 23 deadline, but was refused.

21.     On or around May 13, 2016, Chance Craig called Plaintiff in his office to talk when she arrived to work that morning. He said that he received Plaintiff's email regarding the potential for missing the May 23rd deadline. Craig advised Plaintiff not to worry about failing the Instrumentation test.

22.     On May 23, 2016, Plaintiff was terminated for failing the instrumentation test, despite the fact that she had not reached the 'third strike' required under Eastman's progressive discipline policy for the apprenticeship program. Plaintiff was treated differently than other, similarly situated male counterparts, who failed the same instrumentation test the first time around.

23.     Plaintiff believes, and therefore alleges, that she was discriminated against on the basis of her gender and also that she was retaliated against by Defendant for making complaints that she was being discriminated against on the basis of her gender.

24.     The unlawful employment practices alleged below were and are being within the Marshall Division of the Eastern District of the State of Texas.

25.     At all times, relevant to the allegations contained in this Complaint, the company has continuously been and is now an employer engaged in an industry affecting commerce within the meaning of Section 701 (b)(g)(h) of Title VII, 42 U.S.C. Section 2000e (b)(g)(h).

26.     Within 300 days of the occurrence of the acts of which Plaintiff complains, a charge of employment discrimination was filed with the Equal Employment Opportunity Commission (EEOC) by Plaintiff against the company.

27.     On or about January 18, 2017, Plaintiff received a "Notice of Right to Suit" from the EEOC

in Dallas, Texas and was instituted a civil action in the appropriate Federal District Court within ninety (90) days of the date the receipt of said notice.

28.     At all times relevant hereto, Defendant has enacted and effected policies and practices of unlawful and systematic exclusion of and discrimination against Plaintiff, as a female by *inter alia*:

> (1) Failing to equalize conditions of employment for Plaintiff as contrasted with comparably trained and qualified males;
>
> (2) Adopting unreasonable, unwarranted and arbitrary standards and conditions of employment and advancement designed to discriminate against Plaintiff because of her sex;
>
> (3) Failing to equalize conditions of employment for Plaintiff as contrasted with non-female employees;
>
> (4) Adopting unreasonable, unwarranted, and arbitrary standards and conditions of employment and advancement designed to discriminate against Plaintiff in favor of non-female Caucasian employees.
>
> (5) Committing acts of retaliation against Plaintiff by reason of her complaining of gender discrimination in the workplace.

29.     Defendant's actions, as alleged herein violate 42 U.S.C. Section 2000e et. seq. as amended by the Civil Rights Act of 1991, providing for relief against discrimination in employment.

## DAMAGES

30.     At the time of her discharge, Plaintiff earned wages and received benefits from Defendant consisting of medical insurance, life insurance and retirement benefits.

31.     Plaintiff would show the court that she has suffered actual damages for lost back wages, insurance benefits, lost future wages, emotional pain and suffering, inconvenience, mental anguish and loss of enjoyment of life as a direct result of Defendant's discriminatory employment practices described above.

32.     Defendant intentionally inflicted extreme emotional distress upon Plaintiff by intentionally discharging Plaintiff on the basis of her sex. Plaintiff has suffered extreme emotional distress,

embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's conduct toward Plaintiff and due to Defendant's discharge of Plaintiff.

33.    Plaintiff would further show the court that she is entitled to recover punitive damages for Defendant's intentional and malicious acts as described above toward Plaintiff regarding her employment with Defendant.

34.    Plaintiff hereby demands a trial by jury.

35.    Plaintiff is entitled to recover her reasonable and necessary attorney's fees pursuant to 42 U.S.C. § 2000e.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be entered against Defendant and in favor of Plaintiff:

(a)    Requiring that Defendant pay over to Plaintiff the actual, compensatory damages suffered by Plaintiff by reason of Defendant's illegal acts and practices, including adjusted back and front pay, with interest, and additional amount as liquidated damages;

(b)    Requiring Defendant pay to Plaintiff damages for mental distress, emotional pain and suffering, inconvenience and loss of enjoyment of life imposed upon Plaintiff through and as a result of the aforementioned discriminatory acts;

(c)    Requiring Defendant to pay Plaintiff in the nature of punitive damages as a result of Defendant's willful and malicious discrimination against Plaintiff;

(d)    Requiring that Defendant pay to Plaintiff her attorney's fees and costs and disbursements incurred in the prosecution of this suit; and such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,


/s/William S. Hommel, Jr.
William S. Hommel, Jr.
HOMMEL LAW FIRM
State Bar No. 09934250
1404 Rice Road, Suite 200
Tyler, Texas 75703
903-596-7100
469-533-1618 Facsimile

ATTORNEY FOR PLAINTIFF